1

2

3

4

5

6

7

8

9
                        UNITED STATES DISTRICT COURT

10                     EASTERN DISTRICT OF CALIFORNIA

11                            ----oo0oo----

12
    DHANANJAY SINGH,                     No. 1:26-cv-00244-WBS-CSK
13
               Petitioner,
14
         v.                             MEMORANDUM AND ORDER DENYING
15                                       PETITIONER'S MOTION FOR
    ALBARRAN, et al.,                    TEMPORARY RESTRAINING ORDER
16
               Respondents.
17

18                            ----oo0oo----

19          Petitioner, a citizen of India, entered the United

20  States unlawfully on May 15, 2023, was taken into custody by

21  Department of Homeland Security ("DHS") officials, and

22  subsequently released under supervisory conditions.  (Docket No.

23  2 at 7.)  He alleges that when he appeared for a routine ICE

24  check-in on December 4, 2025, as instructed, without any warning

25  or explanation, he was arrested and taken into custody without

26  being accused of any crime, violation of supervision conditions

27  or failure to comply with ICE requirements. (Id. at 2-3.)

28                                  1

On January 13, 2026, petitioner filed the instant motion for temporary restraining order seeking immediate release from custody on the grounds that his detention violates the procedural and substantive protections conferred by the Due Process Clause.  (See Docket No. 2)  Petitioner further requests that the court enjoin respondents from re-detaining him absent a pre-deprivation hearing before a neutral arbiter.  (Id.)

I.    Temporary Restraining Order

"The standard for a [temporary restraining order] is the same as for a preliminary injunction." Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012) (citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001)).  Typically, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  The last two factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009).

Likelihood of success on the merits is "the most important factor in determining whether a preliminary injunction is warranted." Garcia v. County of Alameda, 150 F. 4th 1224, 1230 (9th Cir. 2025) (internal citations and quotation marks omitted).  "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this

2

extraordinary remedy." <u>Earth Island Inst. v. Carlton</u>, 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation omitted).  A mere possibility of success is insufficient to satisfy this factor; instead, a petitioner must demonstrate "a strong likelihood of success on the merits." <u>Save Our Sonoran, Inc. v. Flowers</u>, 408 F. 3d 1113, 1120 (9th Cir. 2005).

    a.   <u>Procedural Due Process</u>

      Petitioner argues that his detention violates due process because immigration authorities re-arrested him "without notice and without a custody hearing before a neutral arbiter." (<u>See</u> Docket No. 2 at 19.)

      This court has now dealt with many petitions like this one, in which it held that noncitizens present in the United States who were never legally admitted were "applicants for admission" under 8 U.S.C. § 1225(b) and thus subject to mandatory detention. <u>See, e.g.</u>, <u>Alonzo v. Noem</u>, No. 1:25-cv-01519 WBS SCR, 2025 WL 3208284, at *4 (E.D. Cal. Nov. 17, 2025) ("The suggestion that petitioner may evade the designation of 'applicant for admission' merely because he has already entered the United States elides the fact that he was never lawfully admitted."); <u>Mo v. Chestnut</u>, No. 1:25-cv-01789 WBS CSK, 2025 WL 3539063, at *2 (E.D. Cal. Dec. 10, 2025) (same); <u>Valencia v. Chestnut</u>, No. 1:25-cv-01550 WBS JDP, 2025 WL 3205133, at *3 (E.D. Cal. Nov. 17, 2025) (same); <u>Xavier Oliveria v. Albarran, et al.</u>, No. 1:25-cv-01760 WBS AC, 2025 WL 3525923 (E.D. Cal. Dec. 9, 2025) (same); <u>Mo v. Chestnut</u>, No. 1:25-cv-01789 WBS CSK, 2025 WL 3539063 (E.D. Cal. Dec. 10, 2025) (same).

3

1

2     Petitioner makes no effort to distinguish his case from

3  the nearly identical cases in which this court specifically held

4  that noncitizens who have entered unlawfully, even if they were

5  encountered, taken into custody, and released on parole, were

6  nevertheless "applicants for admission" subject to § 1225.  See,

7  e.g., Oliveria, 2025 WL 3525923 (finding § 1225 applied to

8  petitioner who had been detained after entering United States);

9  Mo, WL 3539063, at *1 (noting that "noncitizens present in the

10 United States who were never legally admitted [are] presumably

11 'applicants for admission,'" and applying § 1225); see also Liang

12 v. Almodovar, et al., No. 1:25-cv-09322 MKV, 2025 WL 3641512, at

13 *5 (S.D.N.Y. Dec. 15, 2025) (finding that noncitizen who

14 unlawfully entered United States and was thereafter apprehended

15 at the border did not effectuate a "lawful entry" into the United

16 States and was thus subject to § 1225).

17     Petitioner thus presents neither facts nor arguments

18 that distinguish his procedural due process claim from the claims

19 adjudicated in this court's prior decisions.  Accordingly, the

20 court again concludes that "the procedure authorized by Congress"

21 in 8 U.S.C. § 1225(b) constitutes procedural "due process" as far

22 as petitioner is concerned.  Shaughnessy v. United States ex rel.

23 Mezei, 345 U.S. 206, 212 (1953); see also Angov v. Lynch, 788

24 F.3d 893, 898 (9th Cir. 2015) (for noncitizen who "never

25 technically 'entered' the United States," "procedural due process

26 is simply whatever the procedure authorized by Congress happens

27 to be." (citation modified)); Grigoryan v. Barr, 959 F.3d 1233,

28 1241 (9th Cir. 2020) (same).  And because 8 U.S.C. § 1225(b) does

4

not "say[] anything whatsoever about bond hearings," petitioner is not entitled to one. Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).

      b.   Substantive Due Process

      Petitioner also argues that his detention violates substantive due process because it was not "justified by a sufficient purpose." (See Docket No. 2 at 13 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001).) Petitioner insists that absent some articulated rationale, his re-detention serves "no legitimate government purpose." (Id.)

      Substantive due process does insulate individuals from "arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974). However, the Supreme Court's cases "dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (citation modified). "[T]he threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Johnson v. Brown, 567 F. Supp. 3d 1230, 1251 (D. Or. 2021) (citing Lewis, 532 U.S. at 847 n.8 (1998)).

      There can be many ways for government conduct to be found arbitrary. For example, the Supreme Court has held that the "forced pumping of a suspect's stomach" is arbitrary in the Constitutional sense, see Lewis, 523 U.S. at 846 (citing Rochin v. California, 342 U.S. at 165, 209-10 (1952)), as is subjecting

students to corporal punishment, see Ingraham v. Wright, 430 U.S.
651 (1977) (citing Rochin).  That said, it is not always clear
what conduct rises to the level of being arbitrary in the
Constitutional sense.  One judge of this court, for example, has
stated in a different context that "[d]etaining an individual
without any explanation is not only chilling, but also flatly
inconsistent with any notion of due process."  Kuzmenko v.
Phillips, No. 2:25-CV-00663 DJC AC, 2025 WL 779743, at *5 (E.D.
Cal. Mar. 10, 2025), appeal dismissed sub nom. Martin v.
Phillips, No. 25-3145, 2025 WL 2375268 (9th Cir. July 24, 2025).
While that may or not be true as a general proposition, in this
case there is a valid explanation for petitioner's detention.

        Here, the court finds that petitioner's detention since
December 4, 2025, was not arbitrary, but was based on DHS'
current interpretation of 8 U.S.C. § 1225, as set forth in a
policy memorandum, issued by DHS on July 8, 2025, which "requires
all 'applicants for admission' . . . to be mandatorily detained."
Alonzo, 2025 WL 3208284, at *2.  That policy memorandum has been
publicly available since its release, over seven months ago, and
was based on a deliberate change in interpretation of the
applicability of § 1225.

        This court has repeatedly found that change in
interpretation to be reasonable.  Id. at *3.  It appears to have
been precipitated by circumstances which made it a practical
necessity.  Approximately two months before deeming the change
necessary, DHS noted that a "mass influx of aliens" was
occurring, and that "[w]ithout controls in place . . .  to stem

the influx," it would "lose[] its capacity to hold all aliens as required by the INA." <u>Finding a Mass Influx of Aliens</u>, 90 Fed. Reg. 13622, 13623 (Mar. 25, 2025) (citing 8 U.S.C. § 1225(b)). This influx "present[ed] urgent circumstances requiring an immediate federal response," <u>id.</u>, and the policy memorandum issued shortly thereafter served precisely the function called for by those circumstances: applying the plain text of Section 1225 to preserve DHS' detention authority during a period of operational emergency.

Because petitioner is deemed to be an "applicant for admission" and thus subject to Section 1225, his detention comports with the requirement of mandatory detention set forth in the policy memorandum. Under the new interpretation, it was not necessary for petitioner to have been charged with any crime or failure to comply with ICE requirements for him to have been arrested and detained. Applicants for admission who are subject to mandatory detention may have their parole revoked at any time, for any reason. See <u>Simran Choudhary v. Albarran, et al.</u>, No. 1:26-cv-0119 WBS CKD, 2026 WL 102708, at *3 (E.D. Cal. Jan. 14, 2026) (citing 8 U.S.C. § 1225); cf. <u>Garro Pinchi v. Noem</u>, No. 25-cv-05632 PCP, 2025 WL 3691938, at *4 (N.D. Cal. Dec. 19, 2025) (discussing policy memorandum). In this court's opinion, DHS' new construction of Section 1225 is more consistent with the statutory language than its previous interpretation.

Accordingly, the court finds that detaining petitioner pursuant to DHS' new enforcement policy -- the terms of which had been public and in effect for months at the time of his detention

7

-- does not constitute conduct so egregious as to shock the conscience.  See Lewis, 523 U.S. at 846-47.[1]  To the contrary, and as explained above, compliance with the policy memorandum is a "reasonable justification" for re-detention.  See id.

For the above reasons, petitioner has failed to demonstrate a likelihood of success on the merits of his procedural and substantive due process claims.  Thus, the court "need not consider the other [temporary injunction] factors." California v. Azar, 911 F.3d 558, 575 (9th Cir. 2018).

Congress has given DHS the very difficult task of ensuring that the millions of aliens who are unlawfully within the United States are detained and removed as prescribed by law. It is not the court's role to "judge the wisdom or desirability" of how DHS fulfills that mandate.  Cf. Heller v. Doe by Doe, 509 U.S. 312, 319 (1993).  The methods and procedures by which noncitizens are detained undoubtedly involve intricate details which the courts lack the Constitutional authority or practical resources to dictate.

IT IS THEREFORE ORDERED that petitioner's motion for a temporary restraining order (Docket No. 2) be, and the same

---

[1]    The court does not mean to imply that petitioner could be detained indefinitely.  See Black v. Decker, 103 F.4th 133 (2d Cir. 2024) (indefinite detention of noncitizen violates substantive due process); Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024) (suggesting that detention of noncitizen without termination point violates substantive due process).  Because petitioner does not challenge the length of his detention on substantive due process grounds, the court expresses no opinion on that issue, or on the question of whether other conduct not at-issue here could be so "egregious" as to violate substantive due process, Lewis, 523 U.S. at 846.

hereby is, DENIED.

        Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262, the case is referred to the assigned magistrate judge for further proceedings.

Dated:  January 16, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

9